[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11202

_____

D.C. Docket No. 6:17-cr-00124-CEM-DCI-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ONIEL CHRISTOPHER RUSSELL,
a.k.a. OG Russell,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 4, 2020)

Before WILSON and BRANCH, Circuit Judges, and RESTANI,[*] Judge.

WILSON, Circuit Judge:

_____

[*] The Honorable Jane A. Restani, Judge, United States Court of International Trade,
sitting by designation.

A jury convicted Oniel Russell of possessing a firearm and ammunition as an immigrant illegally or unlawfully in the United States in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2).[1]  Russell appealed his conviction and sentence.  While his appeal was pending, the Supreme Court issued its decision in *Rehaif v. United States*, 588 U.S. ___, 139 S. Ct. 2191 (2019).  *Rehaif* reversed a decision from our court and held that under § 922(g), the government must prove that a defendant ***knew*** "his status as a person barred from possessing a firearm" when he knowingly possessed a firearm.  139 S. Ct. at 2195.  We ordered the parties to submit supplemental briefing addressing how the Supreme Court's decision in *Rehaif* affects Russell's § 922(g)(5)(A) conviction.

Upon review of the parties' initial and supplemental briefs, and with the benefit of oral argument, we conclude that Russell has established the necessary prejudice under plain error review.  Therefore, we vacate Russell's § 922(g) conviction and remand the case to the district court for further proceedings.

## I.    Background

Russell arrived in the United States on October 29, 2008.  He received authorization to stay as a nonimmigrant visitor until January 3, 2009, but he overstayed his authorization period.  In February 2012, Vanessa Hood—a United

---

[1] Russell was also convicted of forcibly assaulting, resisting, impeding, intimidating, or interfering with a federal officer in violation of 18 U.S.C. § 111(a)(1).  He does not challenge that conviction on appeal.

States citizen—filed a Form I-130, Petition for Alien Relative, on Russell's behalf. On the form, Hood sought to classify Russell as her spouse. The United States Citizenship and Immigration Services (CIS) approved her petition on July 5, 2012, but on December 19, 2012, Hood requested in writing to withdraw her petition because Russell was still married to another woman in Jamaica. At some point before Hood withdrew the petition, Russell had filed a Form I-485, Application to Register Permanent Residence or Adjust Status.[2] On October 27, 2016, CIS sent a letter acknowledging Hood's withdrawal of the application. CIS canceled Russell's I-485 application due to the withdrawal of Hood's petition.

On August 24, 2013, a law enforcement officer pulled Russell over for traveling westbound in an eastbound traffic lane in Orange County, Florida. During the traffic stop, the officer smelled marijuana and asked Russell and his companion to step out of the vehicle. The officer searched the vehicle, finding a loaded Ruger firearm in the glove compartment and a loaded Bersa firearm under the front right passenger seat. The officer seized both firearms and secured them in his vehicle. During questioning, Russell took ownership of the Ruger but claimed

---

[2] For an individual to procure an immigrant visa as the spouse of a United States citizen, the spouse must first file the Form I-130 to establish his or her relationship with the individual seeking the visa. *See* 8 U.S.C. § 1154(a)(1)(A)(i). Once the Form I-130 has been filed, the individual seeking a visa may file the Form I-485. *See generally* 8 C.F.R. §§ 245.1, 245.2; *see also Alvarez Acosta v. U.S. Att'y Gen.*, 524 F.3d 1191, 1194 n.6 (11th Cir. 2008) (explaining the purpose of the Form I-130 and Form I-485). After submitting the Form I-485, the individual seeking a visa may seek and accept employment, subject to certain limitations. 8 C.F.R. § 274a.12(c)(9).

he had no knowledge of the Bersa, asserting that the vehicle belonged to his uncle. Russell gave a sworn statement, and the officer released Russell and his companion without arresting them.

In October 2016, a deportation officer with Immigration and Customs Enforcement (ICE), Justin Demoura, received a lead from CIS to investigate Russell's immigration status. After searching immigration and criminal databases, Demoura determined that Russell had overstayed his nonimmigrant visa and thus did not have a lawful immigration status in the United States. On April 25, 2017, Demoura and Jacob Nieves, another deportation officer with ICE, administratively arrested Russell. During the arrest, Russell physically resisted Nieves, resulting in an altercation before Nieves could successfully restrain him.

On April 26, 2017, a federal criminal complaint was filed against Russell for "[a]ssaulting, resisting, or impeding certain officers or employees" in violation of 18 U.S.C. § 111(a). On December 7, 2017, a Superseding Indictment charged Russell with possessing a firearm and ammunition as "an alien illegally and unlawfully in the United States" in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2) (Count One), and knowingly and forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer engaged in official duties in violation of § 111(a)(1) (Count Two). Count One was based on the firearms found during Russell's traffic stop on August 24, 2013.

Prior to trial, the government moved to exclude Russell's previously pending applications before CIS (immigration applications), including his Form I-485. Russell opposed the motion. Before *voir dire*, the district court held a brief hearing on the government's motion in limine. The government argued that the immigration applications did not create lawful status in the United States, so the evidence was irrelevant and could only serve to confuse the jury. Although conceding that his subjective belief about his legal status could not defeat prosecution—as this court had held only several months prior in *United States v. Rehaif*, 868 F.3d 907 (11th Cir. 2017)[3]—Russell argued that the immigration applications were nonetheless relevant. He asserted that they showed "he started the ball rolling" with the immigration process, and that he was entitled to present a defense. The district court granted the motion and excluded any evidence of Russell's immigration applications.

Following a two-day trial, the jury convicted Russell on both counts charged in the Superseding Indictment. The district court sentenced Russell to 60 months' imprisonment, an upward variance from his guideline range of 24 to 30 months' imprisonment.

---

[3] On March 26, 2018, we *sua sponte* vacated and superseded this opinion in *United States v. Rehaif*, 888 F.3d 1138 (11th Cir. 2018), *rev'd*, 139 S.Ct. 2191.

## II.    Standard of Review

We typically review a district court's evidentiary rulings for abuse of discretion.  *See United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 1282 (2018).  But we review unpreserved evidentiary issues for plain error, even when dealing with a new rule of law.  *See* Fed. R. Crim. P. 52(b); *Henderson v. United States*, 568 U.S. 266, 272 (2013); *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

The government argues that Russell's *Rehaif* argument is subject to plain error review.  According to the government, Russell's objection to the exclusion of his Form I-485—although made on relevance grounds—was insufficient to preserve the issue on appeal because he did not specifically argue that the form would be relevant *to his knowledge of his immigration status*.  We need not determine which standard applies because Russell satisfies the more-onerous plain error standard.[4]

---

[4] The government also contended in its supplemental briefing and during oral argument that we should not consider Russell's *Rehaif* argument at all because he failed to timely file a motion as required under *United States v. Durham*, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc) (per curiam) ("Where precedent that is binding in this circuit is overturned by an intervening decision of the Supreme Court, we will permit *an appellant to raise in a timely fashion thereafter* an issue or theory based on that new decision while his direct appeal is still pending in this Court." (emphasis added)).  This argument is without merit.  "Because [Russell] is on direct appeal, *Rehaif* applies to his conviction."  *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019); *see Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that a new rule concerning criminal prosecutions is retroactively applicable to all cases pending on direct appeal).  Further, Russell raised the exclusion of his Form I-485 in his initial brief.  And regardless, we will not punish Russell solely because we beat him to the punch by ordering supplemental briefing before he filed a motion.

To establish plain error, a defendant must show that (1) an error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *United States v. Gonzalez*, 834 F.3d 1206, 1218 (11th Cir. 2016). "The relevant time period for assessing whether an error is plain is at the time of appellate consideration." *United States v. Bane*, 720 F.3d 818, 830 (11th Cir. 2013) (internal quotation mark omitted), *cert. denied*, 571 U.S. 1114 (2013). An error affects substantial rights if there is a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. ___, 136 S. Ct. 1338, 1343 (2016) (internal quotation mark omitted). If the defendant proves those three conditions are met, we can exercise our discretion to correct the plain error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton*, 535 U.S. 625, 631 (2002) (alteration accepted). We evaluate the entire record when reviewing for plain error. *Reed*, 941 F.3d at 1021.

## III.    Analysis

At the time of Russell's trial, the binding law in our circuit was our decision in *Rehaif*, 868 F.3d 907. There we held that § 922(g) does not require the government to prove that a defendant knew he was illegally or unlawfully in the United States. *Id*. at 914. The government relied on this precedent in its motion to exclude Russell's immigration applications, claiming that Russell may use such

7

evidence "to argue that he believed he was lawfully in the United States and was unaware it was illegal for him to possess firearms." Because Russell's subjective belief about his immigration status was irrelevant under *Rehaif*, the government argued that such evidence "would only serve to confuse the jury."

During the hearing on the government's motion, the district court noted that whether a defendant was in the country illegally under § 922(g)(5)(A) was an "objective standard," and so "[i]f someone believes they're here legally, that doesn't change the fact[] that they either are or are not here legally." Russell's counsel nonetheless argued that he believed the immigration applications were relevant because Russell had "started the ball rolling" with the immigration process and was "entitled to a defense." The court ultimately granted the motion, excluding evidence of Russell's immigration applications.

But while Russell's appeal was pending, the Supreme Court reversed our decision in *Rehaif*—the very decision that the government relied on to support its motion in limine. The Supreme Court clarified that, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. So by excluding evidence relevant to Russell's knowledge of his

8

immigration status—namely, his Form I-485—the district court committed an error that was made plain by the Supreme Court in *Rehaif*.

Further, Russell has sufficiently shown a reasonable probability that but for the error, the outcome of his trial would have been different. Russell consistently challenged the nature of his immigration status throughout the district court proceedings. During the hearing on the government's motion in limine, Russell personally addressed the court, stating that he "would never be here illegally." He said that he had traveled the world and toured as an artist. He claimed that he files his taxes and has everything a citizen would have—a credit card, a driver's license, a bank account, and a business. And at the sentencing hearing, Russell and his counsel both reiterated his "profound belief" that he was in the United States legally.

The jury heard none of this. The jury was never given the opportunity to decide whether Russell knew he was in the United States illegally and unlawfully. And there is little evidence in the record to support a jury inference that Russell knew his immigration status. Nothing in the record indicates that Russell knew on the date of his traffic stop that Hood had withdrawn her Form I-130 several months prior, and the record suggests that CIS did not cancel his I-485 application until October 2016.

Of course, we pass no judgment on whether Russell actually had the requisite knowledge under § 922(g)(5)—that is for a jury to decide. And it may be that the government can present evidence to convince the jury that Russell knew he had no legal status in the United States at the time of his traffic stop. But we are convinced that, on this record, Russell has demonstrated a reasonable probability that but for the district court's exclusion of his Form I-485, the outcome would have been different.[5]

Finally, the district court's error effectively precluded Russell from mounting any defense about his knowledge of his immigration status—a necessary element of a § 922(g)(5) conviction. Therefore, even if we cannot know whether his defense will ultimately persuade the jury, we have little doubt that this "error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *See Cotton*, 535 U.S. at 631 (alteration accepted); *see also United States v. Olano*, 507 U.S. 725, 736–37 (1993) ("An error may 'seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence.").

---

[5] The dissent comes to the opposite conclusion: Because Russell overstayed his visa, and because he was already married to another woman in Jamaica when he married Hood, there is no reasonable probability that a jury could conclude that Russell believed he was here legally. But neither of those facts tells us what Russell subjectively believed about his immigration status, and that is what matters here.

## IV.    Conclusion

For the reasons stated above, we **VACATE** Russell's § 922(g) conviction and **REMAND** to the district court for proceedings consistent with this opinion. Accordingly, we need not address his quasi-status, sufficiency, and sentencing arguments.

BRANCH, Circuit Judge, dissenting:

Pursuant to the Supreme Court's decision in *Rehaif v. United States*, in order to convict an individual of violating 18 U.S.C. § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019). But "knowledge can be inferred from circumstantial evidence." *Id.* at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615, n.11 (1994)). Because I believe Russell's knowledge of his illegal status in the United States at the time he possessed the firearms can be inferred from the record evidence, and thus he cannot establish entitlement to relief under plain error review, I respectfully dissent.

To establish plain error, a defendant must show: (1) an error; (2) that was plain; and (3) that affected the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 733–34 (1993). Only then, may we, in our discretion, correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 736 (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Further, "[a]s the 'reviewing court[, we] may consult the whole record when considering the effect of any error on [Russell's]

12

substantial rights.'" *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019

(second alteration in original) (quoting *United States v. Vonn*, 535 U.S. 55, 59

(2002)).  Moreover,

> [i]n reviewing criminal cases, it is particularly important for appellate
> courts to relive the whole trial imaginatively and not to extract from
> episodes in isolation abstract questions of evidence and procedure. To
> turn a criminal trial into a quest for error no more promotes the ends
> of justice than to acquiesce in low standards of criminal prosecution.

*United States v. Young*, 470 U.S. 1, 16 (1985) (quoting *Johnson v. United States*,

318 U.S. 189, 202 (1943) (Frankfurter, J., concurring)).  With these principles in

mind, I turn to the facts at hand.

In this case, a customs and border protection officer testified that he

admitted Russell, a native and citizen of Jamaica, into the United States on October

29, 2008, based on a temporary visitor visa.  At the point of secondary inspection,

the officer exercised his discretionary authority to reduce Russell's authorized

period of stay from the standard six months to three months, and, therefore, Russell

was only authorized to be in the United States until January 3, 2009.  The officer

explained that he wrote the expiration date of Russell's period of stay on Russell's

I-94 admission card, and that Russell was supposed to depart the United States by

that date.  Additionally, the I-94 admission card itself contained a warning that

Russell could not accept employment, was subject to deportation, and was only

allowed to stay in the United States until the date written on the form.  Russell

overstayed. This evidence establishes that Russell knew that as of January 4, 2009, he was in the United States illegally and unlawfully.[1]

While it is true that some intervening events occurred after Russell overstayed his visa (and the majority relies on these events in finding plain error), these events could not serve as a basis for Russell's alleged belief that he was here legally. Specifically, Vanessa Hood, a United States citizen, filed an I-130 petition to reclassify Russell as her spouse, which was approved on July 5, 2012. Russell then filed an I-485 application to Register Permanent Residence or Adjust Status. But on December 19, 2012, Hood requested to withdraw the I-130 petition because she had discovered that Russell was still married in Jamaica to another woman. Thus, the undisputed record evidence establishes that Russell was already married to another woman when he married Hood and so Russell knew that he was not legally married to Hood. Accordingly, it follows that he knew that Hood's I-130 petition seeking to classify him as her spouse and his related I-485 application to adjust status were based on fraudulent information and had no legal basis. [2]

---

[1] Notably, this evidence also undermines Russell's contention before the district court that he would "never be here illegally."

[2] The majority notes that nothing in the record indicates that on the day of the August 24, 2013 traffic stop, Russell knew that Hood had withdrawn her I-130 petition—the petition on which his I-485 application was based. Therefore, the majority concludes that in light of *Rehaif*, but for the exclusion of the I-485 application, there is a reasonable probability that the outcome would have been different (*i.e.*, the jury could have found that Russell subjectively believed he was here legally based on the pending I-485 application to adjust status). But whether Russell knew at the time of the traffic stop that Hood had withdrawn the I-130 petition is immaterial

14

In other words, there is no reasonable probability that a jury would have inferred that Russell believed he was here legally based on the I-485 application because the evidence demonstrates that Russell was fully aware that the application was baseless and premised on an invalid marriage. Accordingly, Russell cannot establish that the error in excluding evidence of the I-485 application affected his substantial rights, much less that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (quoting *Atkinson*, 297 U.S. at 160). Consequently, I would deny Russell's *Rehaif*-based challenge.[3]

---

given that Russell must have known that his marriage to Hood was not valid because he was still married to another woman at the time he married Hood.

[3] Russell also argued in this appeal that: (1) the district court erred in excluding evidence of his pending I-485 application because the application confers "quasi-status" on an alien and places the alien beyond the reach of § 922(g)(5); (2) the government failed to present sufficient evidence that Russell possessed the firearms in question; and (3) his sentence is substantively unreasonable. Because the majority does not address the merits of these issues, I decline to as well. However, I note that I would affirm as to these remaining issues.