**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 29, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ABIEL PEREZ-PEREZ,

    Defendant - Appellant.

No. 19-2154

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CR-03241-JCH-1)**
_____

Shira Kieval, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Tiffany Walters, Assistant United States Attorney (John C. Anderson, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

Defendant-Appellant Abiel Perez-Perez (referred to by the parties and here as Perez) pled guilty to being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). On appeal, he challenges the district court's failure to advise him of two elements of that offense: (1) the alien is illegally or unlawfully present in

the United States; and (2) the alien knows that he is illegally or unlawfully present. Perez failed to raise this issue below and this Court thus reviews for plain error. The government concedes that the omission of these elements constitutes error that is now plain on appeal. The only dispute is whether Perez satisfied the third and fourth prongs of plain-error review.

We conclude that Perez cannot satisfy the third prong because he cannot show that the error affected his substantial rights. Although Perez has a credible claim that, at the time of the offense, he did not know he was unlawfully present in the United States, he has failed to show a reasonable probability that he would not have pled guilty but for the district court's error. This is because the context of Perez's guilty plea makes clear that he pled guilty to avoid mandatory minimum sentences attached to charges the government dismissed in exchange for the guilty plea. Perez fails to show how the district court's error impacted that choice, and he thus fails to satisfy the third plain-error prong. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm his conviction.

## I. BACKGROUND

### Perez's Immigration Status

Perez was born in Mexico. His family was very poor and struggled with homelessness. Perez has only a sixth-grade education, can barely read, and can barely write his own name. He does not speak English. He has worked as a painter and a blacksmith. In 2009, when he was thirty-three years old, Perez unlawfully entered the United States in the hope of obtaining better employment.

2

Since then, Perez has remained in the United States as an undocumented alien, working "under the table." R., Vol. 3 at 74. In 2011, Perez married a U.S. citizen, but he did not take any immediate steps to obtain lawful residency status based on that marriage. In 2012, Immigration and Customs Enforcement charged Perez with illegal entry, but no criminal charges were filed.

In 2016, Perez was placed in removal proceedings in immigration court. Perez's wife and her family bonded him out and he then began the process of adjusting his residency status to lawful based on his marriage to a U.S. citizen. In February 2017, Perez's bond money was returned. Perez was not removed. There is no evidence that Perez ever completed the process to achieve lawful status based on his marriage or ever obtained any lawful status.

**Drug Investigation and Arrest**

In August 2017, the Drug Enforcement Agency (DEA) began investigating Perez for heroin distribution. The DEA determined that Perez was operating a drug-trafficking organization, aided by two associates. The investigation culminated in raids on Perez's stash house, where agents located 187 grams of heroin, and Perez's residence, where agents found 15 firearms, including high-capacity firearms, and ammunition.

**District Court Proceedings**

A federal grand jury indicted Perez, charging him with distribution of at least 100 grams of heroin under 21 U.S.C. § 841(a)(1) and (b)(1)(B), and with conspiracy to do so under 21 U.S.C. § 846. Each charge carried a five-year mandatory minimum. Perez was not initially charged with any firearms-related offenses.

Eighteen months later, the parties reached a plea agreement. Perez agreed to plead guilty to an information charging him with (1) distributing an unspecified quantity of heroin under 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; and (2) "being an alien, who was illegally and unlawfully in the United States," in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). R., Vol. 1 at 135–37. Neither charge carried a mandatory minimum sentence. In exchange, the government agreed to dismiss the charges in the original indictment.

Perez's plea agreement erroneously described the elements of his firearms offense as (1) "the defendant knowingly possessed a firearm"; (2) "the defendant was an alien at the time he possessed the firearm"; and (3) the firearm moved in interstate commerce. Id. at 143. It did not inform Perez of the element requiring that the alien be "illegally or unlawfully in the United States." See 18 U.S.C. § 922(g)(5). Perez acknowledged he was an alien but did not admit he was in the country unlawfully. He did, however, consent to removal following the completion of his sentence.

At his plea hearing, Perez confirmed that he had read and understood the charges in his information and that his attorney had read him the elements of the

4

offenses. However, Perez was never informed that some non-citizens are allowed to possess firearms and that illegal or unlawful status was an element of § 922(g)(5).

Additionally, when Perez pled guilty to that offense, the government only had to establish the elements of (1) status as an alien illegally or unlawfully present in the United States, and (2) knowing possession of a firearm that traveled in interstate commerce. See United States v. Games-Perez, 667 F.3d 1136, 1140 (10th Cir. 2012) (rejecting that a defendant must knowingly possess the prohibited status at the time of the offense). Thus, the government did not have to prove Perez knew his prohibited status. Accordingly, Perez's guilty plea did not include any mention of proof of his knowledge of his prohibited status.

After Perez pled guilty but before he was sentenced, the Supreme Court decided Rehaif v. United States, 139 S. Ct. 2191 (2019), holding that a defendant's knowledge of his prohibited status is a required element the government must prove under § 922(g). Id. at 2194. Thus, the government had to prove that Perez knew he was illegally or unlawfully in the United States at the time of the offense. Perez was never informed of this element.

At sentencing, Perez's offense level was based primarily on the drug charge, but an additional offense level was added because of the firearms offense under the guidelines rules regarding grouping and multiple count adjustments. This resulted in an advisory guidelines range of 78 to 97 months in prison. Perez argued for a downward variance and a below-guidelines sentence of 37 months, but the district court sentenced him to 78 months on each count to run concurrently. This appeal

5

followed. On appeal, Perez argues that the district court erred by failing to inform him of two elements of the § 922(g)(5) offense before accepting his guilty plea. Accordingly, he asks this Court to vacate his guilty plea to that offense.[1]

## II. STANDARD OF REVIEW

Because Perez did not raise this argument below, we review for plain error. See United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). Under plain-error review, "the defendant must establish that (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the [d]efendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." United States v. Dalton, 918 F.3d 1117, 1129–30 (10th Cir. 2019) (quoting United States v. Chavez-Morales, 894 F.3d 1206, 1214 (10th Cir. 2018)). This Court applies plain-error review "less rigidly" when reviewing a potential constitutional error. Id. at 1130 (quoting United States v. Weeks, 653 F.3d 1188, 1198 (10th Cir. 2011)).

Here, the government concedes that Perez has satisfied the first two plain-error prongs by establishing that the district court committed an error that became "clear or obvious at the time of the appeal." Gonzalez-Huerta, 403 F.3d at 732. Thus, the issue is whether Perez has met the third and fourth plain-error prongs.

---

[1] Perez does not challenge the validity of his drug-distribution conviction.

6

To satisfy the third prong, Perez "must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Trujillo, 960 F.3d 1196, 1208 (10th Cir. 2020).[2] This is a lesser standard than proof by a preponderance of the evidence, and it is satisfied by "a probability sufficient to undermine confidence in the outcome." United States v. Bustamante-Conchas, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc) (quoting United States v. Hasan, 526 F.3d 653, 665 (10th Cir. 2008)). If Perez fails to satisfy the third plain-error prong, the Court need not reach the fourth prong. Trujillo, 960 F.3d at 1208.

## III. DISCUSSION

Perez asserts that his guilty plea is constitutionally invalid because he was not informed of two elements of the firearms offense: (1) that the defendant alien is illegally or unlawfully present in the United States; and (2) that the defendant knew of his unlawful status. A guilty plea must be voluntary and intelligent, which requires that the defendant receive "real notice of the true nature of the charge against him." Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). This requires notice of the elements of the crime charged. Hicks v. Franklin, 546 F.3d 1279, 1284 (10th Cir. 2008).

---

[2] Perez filed his opening brief the day before this Court issued Trujillo. In his brief, he argued for a different standard, under which the third prong is satisfied by a Rehaif error unless "the defendant was made aware of the missing elements through other means, or if the record contains an admission that would satisfy the elements." Aplt. Br. 12. In his reply brief, Perez conceded that this argument is foreclosed by Trujillo.

7

Accordingly, the district court plainly erred by accepting Perez's guilty plea despite Perez not being informed of two elements of § 922(g)(5). Yet Perez agreed to plead guilty to that charge (and the unspecified-quantity heroin-distribution charge) in exchange for the dismissal of charges that carried five-year mandatory minimums. Perez hoped that his plea to the substitute charges would result in a sentence below that five-year threshold. It did not. So Perez now tries to get out from his plea agreement by arguing <u>Rehaif</u> error. But the <u>Rehaif</u> error has no impact on the reason Perez took the plea deal, so he cannot show a reasonable probability that, but for the error, he would not have pleaded guilty. For that reason, as explained in more detail below, the Court concludes that Perez fails to satisfy plain-error review.

In reaching that conclusion, we first consider Perez's argument that he has a credible claim that he was not aware, at the time of his offense, that he was unlawfully present in the United States or that he could not lawfully possess a firearm. Accepting that argument, we then turn to whether it establishes a reasonable probability that, but for the district court's error, Perez would not have pled guilty. And that is where Perez's argument fails.

**A.    Perez has a credible claim that, at the time of his offense, he was not aware that he was unlawfully present in the United States.**

In the uninformed-guilty-plea context, a defendant might be able to satisfy the third prong of plain-error review by establishing a plausible defense based on an erroneously omitted element. <u>See</u> <u>United States v. Dominguez Benitez</u>, 542 U.S. 74,

8

85 (2004); <u>Trujillo</u>, 960 F.3d at 1208. For a defendant claiming a <u>Rehaif</u> error, such a plausible defense may be based on a claim of ignorance of the prohibited status. <u>See</u> <u>United States v. Fisher</u>, 796 F. App'x 504, 510 (10th Cir. 2019) (unpublished).

Here, we believe that Perez has a colorable argument that, at the time of the offense, he was not aware that he was unlawfully present in the United States. The record provides ample support for this potential defense: (1) Perez had been in the United States for at least seven years at the time of his offense; (2) Perez was married to a U.S. citizen; (3) Perez's U.S. citizen wife had initiated the process for him to adjust his residency status to lawful based on their marriage; (4) Perez's 2017 bond money was returned to him and the removal proceedings concluded, apparently, without him being removed;[3] and (5) Perez was illiterate, unsophisticated, and unfamiliar with the complexities of immigration law.

In light of these facts, Perez may well not have known at the time of the offense that he was unlawfully present in the United States. Although it is undisputed that Perez never had lawful status, he could have believed that he had some sort of lawful status in 2017 based on the above facts—or at least he could have credibly argued to a jury that he so believed.

These circumstances are sufficient to support a plausible defense, and Perez need not assert now on appeal that at the time of the offense he actually believed he had lawful status. Our determination is not based on "*post hoc* assertions from a

---

[3] The record does not explain why the bail money was returned or how the removal proceedings concluded.

defendant about how he would have pleaded," but on "contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. United States, 137 S. Ct. 1958, 1967 (2017); see also United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000) ("This court will not consider material outside the record before the district court."). Moreover, Perez does not need to assert or prove his actual innocence. Trujillo, 960 F.3d at 1201. Even if Perez was actually guilty of the omitted elements, he could still potentially satisfy the third plain-error prong by showing that the government would have had a difficult time proving his guilt. See id. at 1207–08.

Perez has made that showing, and the government's arguments fail to establish otherwise. The government merely reiterates that whatever Perez's efforts to adjust his status to lawful, there is no evidence that he completed the process and he never obtained a green card or other documentation of lawful status. This is true, but it only proves that Perez never had lawful status, not that he never thought he had lawful status. The government does not have any direct evidence to contradict Perez's claims, and it could not force him to testify. There is simply no evidence that Perez knew the government could prove its case against him absent his cooperation and an admission that he knew, at the time of the offense, of his prohibited status.

Under similar circumstances, our sister circuits have found the third plain-error prong satisfied. See United States v. Jawher, 950 F.3d 576, 580–81 (8th Cir. 2020); United States v. Russell, 957 F.3d 1249, 1253–54 (11th Cir. 2020); United States v. Balde, 943 F.3d 73, 97–98 (2d Cir. 2019). In each case, the court

found the third plain-error prong satisfied where the defendant had a credible claim that he thought he had lawful status, or, "[a]t the very least, . . . reasonable grounds on which to contest his knowledge of his prohibited status to a jury." Jawher, 950 F.3d at 580. Here too, Perez at least has reasonable grounds to contest this element to a jury.

The government fails to distinguish those cases. It attempts to do so by pointing out that each defendant had argued below that he had legal status, whereas Perez did not. But here, unlike those cases, Perez was told that he was guilty merely for being an alien in possession of a firearm, regardless of whether he was in the United States lawfully or unlawfully. Thus, Perez had no reason to argue about his status, because he could not dispute that he was an alien.

That Perez has a colorable argument to satisfy the third prong is further supported by comparison to the Rehaif-fix cases the government cites in which courts found this prong not satisfied. Those courts relied on overwhelming evidence of guilt for the omitted element. For example, in Trujillo, a felon-in-possession case, this Court found that the defendant could not "credibly claim he was unaware that he was a felon" where he had been previously convicted of six felonies and sentenced to twenty-four years in prison. 960 F.3d at 1208. Similarly, in United States v. Puri, 797 F. App'x 859 (5th Cir. 2020) (unpublished), an alien-in-possession case, the defendant admitted that at the time of the offense he believed that he was unlawfully present. Id. at 864.

11

Perez has admitted no such knowledge at the time of the offense and he has a credible claim that he lacked that knowledge. The government could gather further evidence and argue against Perez's claim at trial, and a jury might well reject it, but "we cannot conclude on the present record that the government's arguments are so strong that [Perez] would have had no plausible defense at trial and no choice but to plead guilty." Balde, 943 F.3d at 97.

We reject each of the government's arguments to the contrary, but we consider two of note.[4] The first addresses the district court's failure to inform Perez that only unlawfully present aliens, not all aliens, are prohibited from possessing firearms. The government argues that this error was non-prejudicial because Perez received actual notice of that element from the information, which included the factual allegation that Perez was "an alien, who was illegally and unlawfully in the United States." R., Vol. 1 at 135. That allegation was the only mention of that element in the record.

The government cites United States v. Ferrel, 603 F.3d 758 (10th Cir. 2010), as support for its notice theory. But in Ferrel, this Court found no effect on substantial rights where an omitted element was (1) alleged in the indictment, (2) repeated in the plea agreement, (3) repeated in the defendant's plea statement, and (4) discussed by the defendant with his attorney. Id. at 763–64. All that is

---

[4] In addition to these two arguments, which were raised in the government's brief, at oral argument the government alluded to other offenses with which it could have charged Perez. Those hypothetical charges are not supported by the record and we do not consider them.

12

significantly more substantial evidence of actual notice than exists here, where claimed notice is based solely on a factual allegation in the information.

In further contrast with Ferrel, the pertinent element here was not just omitted, it was affirmatively misrepresented. Perez's plea agreement described the element as "the defendant was an alien at the time he possessed the firearm." R., Vol. 1 at 143. This inaccurate description of the element nullifies any notice provided by the factual allegation in the information. For these reasons, we reject the government's argument that Perez cannot satisfy the third prong because the information gave him actual notice of this element.[5]

The government's second argument is based on its assertion that Perez admitted below to being an unlawfully present alien. The government sees that "admission" in (1) Perez's failure to object to the PSR's listing of his immigration status as "illegal alien" and (2) various statements by Perez acknowledging that he is undocumented and worked "under the table." Aple. Br. 7, 12. The government argues that this admission and Perez's failure to raise any claim as to his lawful status indicates that he knew all along he was illegal. But as mentioned above, because Perez was told that the offense applied to all aliens, he never had reason to argue that he had lawful status or that he thought he did.

---

[5] Even if the factual allegation in the information had provided actual notice, that would only apply to the error for the omitted element "an alien unlawfully or illegally present in the United States," not the omitted knowledge-of-status element. Thus, this argument would not be fatal to Perez's claim in any event.

13

In addition, Perez's "admissions" at the time of sentencing in 2019 are of questionable significance as to his knowledge of his status at the time of the offense in 2017. Perez admits that he now knows that he is unlawfully present and even concedes that it is "very likely" he was unlawfully present at the time of the offense. Aplt. Reply Br. 5–6. But that does not mean that at the time of the offense he knew he was unlawfully present, and that is what the government would have had to prove.

In summary, we conclude that Perez has established a plausible defense to the § 922(g)(5) offense, because he has a credible claim that, at the time of the offense, he was not aware that he was unlawfully present in the United States. We next consider whether that plausible defense is sufficient to establish a reasonable probability that, but for the district court's error, he would not have pled guilty.

**B.     Despite his plausible defense, Perez has not established a reasonable probability that, but for the district court's error, he would not have pled guilty.**

In some Rehaif-fix cases, establishing a plausible defense based on the omitted element might be sufficient to show that the error affected the defendant's substantial rights. But in light of the particular circumstances of Perez's plea agreement, his plausible-defense argument is not sufficient to make such a showing here.

We first consider the context of Perez's plea agreement. In one sort of plea-deal case, a defendant is charged with a particular offense and accepts a plea deal because he thinks he has no defense to that charge and he hopes to receive some sort of consideration for his plea, such as a reduced sentence. See, e.g., United States v. Sanchez, 983 F.3d 1151, 1157 (10th Cir. 2020) (describing a defendant claiming

14

Rehaif error after pleading guilty to being a felon in possession of a firearm after his motion to suppress evidence was denied); see also U.S.S.G. § 3E1.1(a) (decreasing the offense level for a defendant who "clearly demonstrates acceptance of responsibility for his offense"). In such a case, we may presume that a plausible defense based on an erroneously omitted element is enough to satisfy the third plain-error prong. See Trujillo, 960 F.3d at 1207. But this is not that sort of case.

Here, Perez was not initially indicted for the firearms offense, he was indicted for (1) distribution of at least 100 grams of heroin under 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (2) conspiracy to distribute at least 100 grams of heroin under 21 U.S.C. § 846. Those charges each carry a five-year mandatory minimum. In exchange for the dismissal of those charges, Perez agreed to plead to an information charging him with (1) the § 922(g)(5) firearms offense; and (2) distributing an unspecified quantity of heroin under 21 U.S.C. § 841(a)(1) and (b)(1)(C). Both of those charges lacked mandatory minimum sentences.

In light of those facts, we review what the plea agreement did for Perez and what it did not do, and how those considerations speak to Perez's motivations for accepting the agreement. To start, the plea deal replaced the quantity-specific distribution and conspiracy drug charges with an unspecified-quantity distribution charge. This reveals two things: First, that Perez's motivation could not have been avoiding a drug charge, because the plea deal retained such a charge. Second, that the new drug charge was uniquely tailored to Perez's needs in that it omitted a specific quantity of drugs. Although an unspecified-quantity charge is not unheard

15

of, we think it uncommon. Such a charge does not implicate mandatory minimum sentences. The unusualness of not having a specified quantity suggests that the new charge was tailored to Perez's desire to avoid mandatory minimums.

In addition to modifying the drug charges, the plea agreement added a new charge: the firearms offense under § 922(g)(5). Under the Sentencing Guidelines, that offense did not group with the unspecified-quantity drug charge, resulting in a multiple count adjustment increasing Perez's base offense level by one level. In contrast, the original drug charges in the indictment would have grouped, resulting in no adjustment for multiple counts. See U.S.S.G. § 3D1.2. The additional offense level resulting from the non-grouping charges translated to an increase in the overall advisory guidelines range, from 70 to 87 months to 78 to 97 months. Thus, accepting the plea agreement resulted in a higher guidelines range than would have pleading to the original charges.

In sum, the plea agreement (1) did not allow Perez to avoid a drug charge, (2) added the new charge under § 922(g)(5), and (3) increased Perez's guidelines range by 8 to 10 months. It did, however, confer one significant benefit upon Perez by allowing him to avoid any mandatory minimum sentence. Because the charges implicating mandatory minimums were dismissed, Perez was able to argue for a below-guideline sentence of 37 months, well below both the 78-to-97-month advisory range he faced on the plea agreement charges and the five-year minimum he faced on the original charges. Absent the plea agreement, Perez could not have argued for that sentence. These circumstances make clear that Perez's motivation for accepting the

16

plea agreement was to avoid the mandatory minimums in the hope of obtaining a downward variance and reducing his incarceration period. We can confidently conclude this was Perez's motivation because it was the only advantage offered to Perez under the new plea offer that he accepted.

In essence, Perez gambled in accepting an 8-to-10-month increase in his advisory range (from 70 to 87 months to 78 to 97 months) in exchange for avoiding the 60-month mandatory minimums. Although Perez's counsel suggested during oral argument that the increased advisory range shows that the plea deal was not such a great deal for Perez, that increase actually cuts against Perez's case. By accepting a higher advisory range in his plea agreement, Perez made clear that his motivation in accepting the agreement was to avoid mandatory minimums so that he could argue for a below-guidelines sentence.

Perez lost his gamble, as the district court rejected his downward-variance argument and sentenced him to 78 months, at the bottom of the advisory range but above the mandatory minimum he would have faced under the original charge. Because Perez's strategic choice did not pay off, he now wants to back out of his plea deal. But even had Perez known of the omitted elements, there is no reason to believe that would have impacted his decision to plead, because it would not have impacted his motivation. Perez made a calculated decision to accept this plea agreement in order to avoid the mandatory minimums. That calculus does not change depending on whether or not Perez had a chance to beat the firearms offense, when he was not charged with that offense in the first instance.

Indeed, what really mattered was the government's ability to prove the initial drug charges, not its ability to prove the substitute firearms offense. Critically, however, Perez never argues that the government would have had any difficulty in proving those initial charges. Perez simply overlooks this point, arguing only that because he has now established a plausible defense to the new gun charge, he satisfies the third plain-error prong.[6] This fails to satisfy his obligation under that prong.

We read the dissent as disagreeing with us on two main points. First, the dissent deems Perez's plausible-defense argument to the gun charge sufficient to satisfy the third plain-error prong. We think this fails to appreciate the circumstances under which Perez accepted the plea agreement, which was to avoid the mandatory-minimum requirements of the initial drug charges. (See Aplt. Br. 2 ("[Perez] pled guilty to both charges in the information in exchange for dismissal of the two indicted counts.").)

Second, in response to our reasoning, the dissent undertakes its own analysis of the government's ability to prove the initial drug charges, concluding that the government would have had "extraordinary difficulty" in proving those charges. (Dissent 8.) Accordingly, the dissent finds "a reasonable probability that absent the

---

[6] The government additionally points out that Rehaif came out before Perez was sentenced, such that Perez could have tried to withdraw his guilty plea on that basis, but instead chose to stand by it in the hope of reduced sentencing. We reject this argument because it would only have weight if Perez had actual knowledge of Rehaif, and there is no such evidence.

18

error, [Perez] wouldn't have pleaded guilty because of (1) the weakness of the government's evidence showing knowledge of his unlawful status and (2) the government's inability to prove [Perez's] constructive possession of at least 100 grams of heroin." (Id. at 15–16.)

We cannot agree. To be sure, the dissent makes a credible argument that the government might have had difficulty proving the initial drug charges. But because Perez did not make that argument, this approach would require us to reverse under plain-error review based on a ground not argued by the defendant. We decline to do so. Instead, we affirm because it is Perez's burden to establish that his substantial rights were affected, and, by not arguing that the government would have had difficulty in proving the initial drugs charges, he has not met his burden of proving plain error.

In light of Perez's motivation for taking the plea deal—a motivation that is unchanged by Rehaif—he has not established a reasonable probability that, but for the omitted elements, he would not have pleaded guilty. Thus, Perez fails to satisfy the third prong of plain-error review. Because Perez does not satisfy that prong, we need not consider the fourth prong. See Trujillo, 960 F.3d at 1208.

*          *          *

We conclude that the district court did not commit reversible plain error by accepting Perez's uninformed guilty plea because Perez fails to establish a reasonable

19

probability that, but for the error, he would not have pleaded guilty. Accordingly, we affirm his guilty plea and conviction.[7]

## IV.    CONCLUSION

For the reasons provided above, we AFFIRM the district court on all issues presented on appeal.

---

[7] Perez had additionally argued that the district court's error regarding the firearms offense also required vacating the sentence for the unspecified-quantity drug offense along with the sentence for the firearms offense. However, because we affirm Perez's firearms conviction, we also affirm the unspecified-quantity drug sentence.

*United States v. Abiel Perez-Perez*, No. 19-2154
**BACHARACH**, J., dissenting.

The defendant, Mr. Abiel Perez-Perez, pleaded guilty to being a prohibited person in possession of a firearm and ammunition. 18 U.S.C. § 922(g)(5)(A). But the prohibition applies only when defendants know that they fall within a category of persons barred from possessing a firearm. *United States v. Benton*, No. 20–6023, slip op. at 2, 23 (10th Cir. Feb. 23, 2021) (to be published). Mr. Perez-Perez's plea agreement didn't mention the need for the government to prove the knowledge required for a conviction.

I agree with the majority that the omission in this plea agreement constitutes an obvious error. But the majority concludes that the error did not affect Mr. Perez-Perez's substantial rights. I respectfully disagree. If Mr. Perez-Perez had known of the knowledge element, there is a reasonable probability that he would not have pleaded guilty. I thus respectfully dissent.

## I.	Mr. Perez-Perez pleads guilty based on an incorrect recitation of the elements.

The government initially charged Mr. Perez-Perez with two drug-trafficking offenses:

1.	Possession of at least 100 grams of heroin with intent to distribute (21 U.S.C. § 841(a)(1), (b)(1)(B)(i))

2.	Conspiracy to possess at least 100 grams of heroin with intent to distribute (21 U.S.C. § 846)

Upon conviction, the mandatory minimum sentence would be five years' imprisonment. 21 U.S.C. § 841(b)(1)(B)(i).

Instead of pursuing these charges, the government entered into a plea agreement with Mr. Perez-Perez. This agreement required the government to dismiss the initial charges and Mr. Perez-Perez to plead guilty on two new charges:

1. Distributing an unspecified quantity of heroin (21 U.S.C. § 841(a)(1), (b)(1)(C)) and aiding and abetting the distribution (18 U.S.C. § 2)

2. Possessing a firearm and ammunition despite a status that prohibits possession (18 U.S.C. § 922(g)(5))

The new charges carried no mandatory minimum sentence.

For the second charge, Mr. Perez-Perez's plea agreement included an element that "the defendant was an alien at the time he possessed the firearm or ammunition." R. vol. 1, at 143. But the plea agreement didn't mention the elements of

- unlawful presence in the United States and

- knowledge of his unlawful status.

Nor were these elements mentioned in the written factual basis for Mr. Perez-Perez's guilty plea. Instead, the factual basis reflected only Mr. Perez-Perez's admission that he "was not a citizen or national of the United States." *Id.* at 145.

Because he pleaded guilty to the additional firearm charge along with the drug offense, Mr. Perez-Perez's guideline range increased for the multiple counts. With the firearm charge, the guideline range was 78–97 months. Without the firearm charge, the guideline range would have been only 70–87 months. But if convicted on the initial drug charge, Mr. Perez-Perez would have faced a mandatory minimum of five years' imprisonment.

## II.    We review for plain error.

After Mr. Perez-Perez pleaded guilty, the Supreme Court held in *Rehaif v. United States* that conviction of the firearm offense (violation of 18 U.S.C. § 922(g)) requires proof of the defendants' knowledge of their unlawful status. 139 S. Ct. 2191, 2200 (2019). Because the Supreme Court decided *Rehaif* after Mr. Perez-Perez had pleaded guilty, he hadn't raised the issue in district court. So we review for plain error. *United States v. Trujillo*, 960 F.3d 1196, 1201 (10th Cir. 2020).

For plain-error review, the defendant must show that (1) an error took place, (2) the error was plain, (3) the error affected the defendant's "substantial rights," and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *E.g.*, *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (citation omitted).

The government concedes that Mr. Perez-Perez satisfied the first two requirements. I agree with this concession, for the district court committed

3

an obvious error[1] by failing to inform Mr. Perez-Perez that the government needed to prove not only his unlawful presence in the United States but also his knowledge at the time of this unlawful status.

**III.   The error affected Mr. Perez-Perez's substantial rights.**

The defendant must show that but for the obvious error, a reasonable probability existed that he would not have pleaded guilty to unlawful possession of a firearm. *Trujillo*, 960 F.3d at 1201. Under this test, he needed only to show "a probability sufficient to undermine confidence in the outcome." *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc) (quoting *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008)). In my view, Mr. Perez-Perez satisfied this burden.

**A.   The government had only weak evidence of Mr. Perez-Perez's knowledge of his unlawful status.**

The government contends that Mr. Perez-Perez knew of his unlawful status, so informing him of the element wouldn't have affected his decision to plead guilty. But Mr. Perez-Perez argues that the government would have had difficulty proving knowledge of his unlawful status when he possessed the firearm.

I agree with Mr. Perez-Perez. In light of his background and the complex procedural steps in his removal proceedings, the government

---

[1]     The error is obvious only in retrospect because the district court understandably relied on our precedents existing at that time. The district court lacked the benefit of *Rehaif*.

4

would have had a difficult time proving knowledge of his unlawful status. Given that difficulty, there is a reasonable probability that Mr. Perez-Perez would not have pleaded guilty to the firearm charge.

We have previously addressed the impact of failing to inform defendants that guilt required knowledge of their unlawful status. *United States v. Trujillo*, 960 F.3d 1196 (10th Cir. 2020). In that case, we concluded that the omission hadn't affected substantial rights because the defendant couldn't credibly deny awareness of his felony status: He had been convicted of multiple felonies, had served time in prison, and had admitted his felony status. *Id.* at 1208. So we assumed that the defendant would have pleaded guilty even if he had known of the government's burden to prove knowledge of his unlawful status. *Id.*

But we acknowledged that "if the evidence of a defendant's knowledge of his felony status is weak, we can presume his substantial rights were affected because he might have proceeded to trial if he had known the government would be required to prove he knew he was a felon." *Id.* at 1207. This presumption would be equally applicable if the government had only weak evidence of the defendant's knowledge of his immigration status. *See United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019) (concluding that the defendant's substantial rights were affected because his immigration status was "hotly contested").

5

In determining the strength or weakness of the evidence involving Mr. Perez-Perez's knowledge of his immigration status, we must consider the nature of his removal proceedings. The government started removal proceedings in 2016, but Mr. Perez-Perez was never removed.[2] He began the process of adjusting to lawful status based on his marriage to a U.S. citizen, and the government returned his bond money to him. No one told him to leave the United States, and nothing further took place in the removal proceedings.[3] Why would Mr. Perez-Perez have thought that he was still unlawfully in the United States?

Wouldn't anyone in his shoes think that his status had changed? In 2016, Mr. Perez-Perez had presumably known that he had been undocumented, arrested, and administratively charged with unlawful presence. But the circumstances changed by the time that he was found with a firearm. By then, the government had returned his bond money, his marriage to a U.S. citizen had provided a pathway to citizenship, he had begun the process to obtain an adjustment of status, and no one had told him to leave the United States.

---

[2]  The presentence report also notes that in 2012, Mr. Perez-Perez "was charged by Immigration and Customs Enforcement for Illegal Entry, but no charges were filed." R. vol. 2, at 309.

[3]  Mr. Perez-Perez states that the removal proceedings were closed, but the record does not say that the proceedings were closed.

This court has acknowledged the technicalities and complexity of our immigration laws. *See, e.g.*, *United States v. Chang Hong*, 671 F.3d 1147, 1153 (10th Cir. 2011). Even a well-educated layperson might have struggled to understand that he was unlawfully present under these circumstances. But Mr. Perez-Perez was not well-educated: He had only a sixth-grade education, could barely read, and didn't speak English.

Under these circumstances, defense counsel could persuasively argue that at the time of the offense, Mr. Perez-Perez had believed that he was lawfully in the United States. Countering that argument would likely have proven difficult, and the government would have had to prove knowledge beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *see* p. 9, 11–12, below.

Given the government's difficulty in proving Mr. Perez-Perez's knowledge of his unlawful status, we should presume that the failure to inform him of this element affected his substantial rights. *United States v. Trujillo*, 960 F.3d 1196, 1207 (10th Cir. 2020); *see* p. 5, above.

**B.     The government would also have faced difficulty in proving Mr. Perez-Perez's constructive possession of 100 grams or more of heroin.**

Despite this presumption, the majority affirms, reasoning that Mr. Perez-Perez would likely have pleaded guilty anyway because the agreement with the government relieved him of a potential mandatory minimum term of five years. In my view, however, the government would

7

have had extraordinary difficulty in proving Mr. Perez-Perez's possession of enough heroin to trigger the mandatory minimum.

In a single sentence, the government asserted that "the government could easily have established a drug quantity above the 100-gram threshold for the drug charges in the indictment." Government's Resp. Br. at 18; *see* pp. 12–13, below. For this assertion, the government relied on the presentence report's attribution of "responsibility" to Mr. Perez-Perez for 462 grams of heroin.

But Mr. Perez-Perez was never charged with distributing 462 grams. He was initially charged only with distributing 100 grams or more on October 25, 2017. According to the presentence report, the only heroin found that day was roughly 186 grams in a shoe and roughly 1 gram on a kitchen table.

Mr. Perez-Perez acknowledges that part of "the calculus" is the relative strength of the government's evidence that Mr. Perez-Perez had possessed enough heroin on October 25, 2017, to trigger the mandatory minimum. Oral Argument at 2:14. The *only way* to evaluate the strength of that evidence is to assess the appellate record. *See United States v. Dussard*, 967 F.3d 149, 156–57 (2d Cir. 2020) (evaluating the appellate record to determine the effect on the defendant's substantial rights based on a negotiated guilty plea that had eliminated the possibility of a ten-year mandatory minimum sentence).

8

At sentencing, the district court considered Mr. Perez-Perez's relevant conduct to include the heroin found in the shoe. U.S.S.G. § 1B1.3(a)(1)(A)–(B). But Mr. Perez-Perez didn't actually possess any heroin on October 25, 2017; the government's only possible theory of guilt would involve constructive possession. *See, e.g.*, *United States v. McCullough*, 457 F.3d 1150, 1168 (10th Cir. 2006). For constructive possession, the government would have needed to prove beyond a reasonable doubt that Mr. Perez-Perez (1) had knowingly possessed the power to exercise dominion or control over the contraband and (2) had actually intended to exercise control. *See United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (elements); *In re Winship*, 397 U.S. 358, 364 (1970) (proof beyond a reasonable doubt).

Given this burden, the government would likely have been unable to prove Mr. Perez-Perez's possession of 100 grams of heroin. On the day in question, Mr. Perez-Perez and another man were standing in the kitchen. The only heroin in the kitchen totaled a little over 1 gram (1.094 grams). For the mandatory minimum, the government needed to prove Mr. Perez-Perez's constructive possession of roughly 99 more grams. 21 U.S.C. § 841(a)(1), (b)(1)(B)(i).

Law-enforcement officers found roughly 186 grams of heroin in a shoe in the closet of another room. But Mr. Perez-Perez has consistently

9

denied that this heroin was his. For example, he argued in district court that the evidence hadn't tied him to the heroin found in the shoe:

> [D]uring a post arrest interview, Torres stated that he was responsible for what was in the bedroom, meaning that he was responsible for the heroin in there. During the interview, in no way did Mr. Torres indicate that Mr. Perez was involved with his 187.09 grams of heroin. Further, nothing in the bedroom points that Mr. Perez was using the room. None of the documents nor items found in the bedroom demonstrate any ownership to Mr. Perez. Also, throughout law enforcement's operation, which included three controlled buys and surveillance of the apartment, no evidence ever pointed that Mr. Torres and Mr. Perez were involved in the same operation.

Mr. Perez-Perez's Objection to Presentence Report at 5–6 (citations omitted).

If prosecutors had pursued the initial charge, they would have had eight problems in trying to show Mr. Perez-Perez's constructive possession of this heroin:

1. The 186 grams of heroin was found inside a shoe in the bedroom closet. Presentence Report at 7; Transcript of Sentencing at 19 (Testimony of DEA Agent David Nutley).

2. The shoe was a size ten, and Mr. Perez-Perez contends that he wears a size 11 shoe. Amended Criminal Complaint at 3; Report of Investigation at 3, 6; Transcript of Sentencing at 20.

3. Mr. Perez-Perez was not in the bedroom at the time of the arrest. Asleep in the bedroom was another man, Mr. Diego Torres-Ledesma. *E.g.*, Amended Criminal Complaint at 2–3; Transcript of Sentencing at 18, 24 (Testimony of DEA Agent David Nutley); United States' Sentencing Memorandum at 3.

4. Mr. Torres-Ledesma stated that he lived in the apartment. *E.g.*, United States' Sentencing Memorandum at 5.

10

5. Mr. Torres-Ledesma admitted several times that the heroin in the shoe was his. Presentence Report at 8 (noting that Mr. Torres-Ledesma "stated that he was responsible for what was found in the bedroom" and later "restated that it was his heroin"); Amended Criminal Complaint at 3; Transcript of Sentencing at 23 (Testimony of DEA Agent David Nutley).

6. Mr. Torres-Ledesma never said that he was working with or for Mr. Perez-Perez. Transcript of Sentencing at 23 (Testimony of DEA Agent David Nutley).

7. Mr. Perez-Perez's primary residence was elsewhere. Presentence Report at 6.

8. The apartment (where the heroin was found) was rented in the name of another individual, Mr. Cesar Martinez—not Mr. Perez-Perez. Transcript of Sentencing at 22 (DEA Agent's admission that the investigation found that "the apartment was not rented by Mr. Perez"); *id.* at 44 (the government's concession that the property "was not rented to Mr. Perez-Perez's name").

The government pointed out that Mr. Perez-Perez had a key to the apartment. United States' Sentencing Memorandum at 4. And no one questions his access to the apartment. But the government needed to prove beyond a reasonable doubt not just Mr. Perez-Perez's access but also his intent to exercise dominion over heroin

- found inside a shoe in a closet,

- in a shoe that wouldn't have fit Mr. Perez-Perez's foot,

- claimed multiple times by another man, Mr. Torres-Ledesma,

- found in a bedroom where Mr. Torres-Ledesma was sleeping, and

- in an apartment rented to Mr. Martinez (not Mr. Perez-Perez).

11

*See Alleyne v. United States*, 570 U.S. 99, 107–08 (2013) (requirement of proof beyond a reasonable doubt because of the resulting mandatory minimum sentence). Given the difficulty of that burden, the government might not even have tried to prove Mr. Perez-Perez's constructive possession of the heroin in the shoe. If the government had persisted with the charge, however, Mr. Perez-Perez would likely have obtained an acquittal.

The majority notes that Mr. Perez-Perez did not argue in his appellate briefing that the government would have had difficulty proving the initial heroin charge. There's a reason for that. The government waited until oral argument to develop an argument that it could have proven possession of 100 or more grams of heroin.

In briefing, Mr. Perez-Perez argued that the government probably could not have proven knowledge of his unlawful status. I agree with him. Given the government's likely inability to prove Mr. Perez-Perez's knowledge of his unlawful status, we would presume a reasonable probability that he would not have pleaded guilty to the firearm charge. *See United States v. Trujillo*, 960 F.3d 1196, 1207 (10th Cir. 2020); *see also* p. 5, above.

Despite this presumption, the government responded that (1) Mr. Perez-Perez had not contested his status and (2) the government could have proven knowledge of his prohibited status. The government made only a

12

single, cursory reference to Mr. Perez-Perez's benefit from the plea agreement; even that cursory reference appeared only in the course of an argument that Mr. Perez-Perez should have sought to change his plea before the sentencing. *See* p. 8, above.

Had the government clearly argued that Mr. Perez-Perez would have pleaded guilty to the firearm offense to avoid a mandatory minimum, he could have countered the argument in his reply brief. But the government waited until oral argument to develop an argument that the original charges bore on the inquiry into Mr. Perez-Perez's substantial rights.

As Mr. Perez-Perez pointed out, we have no way of knowing why the government dropped the original charges. Oral Argument at 12:06–12:35. The majority's explanation might be right: The government might have dropped the charges at Mr. Perez-Perez's insistence (for reasons that we can only speculate about). But the government might also have dropped the initial charge on drug quantity because of doubt that it could prove Mr. Perez-Perez's intent to exercise dominion over heroin

- in someone else's shoe

- in someone else's bedroom

- in someone else's apartment.

Without substantive briefing on this issue, we can only speculate on why the government agreed to amend the charges. Speculation aside, our presumption remains. *See* pp. 5–6, above.

13

* * *

I would not uphold the sentence based on an argument that (1) the government did not develop until oral argument and (2) lacks support in the record. We have previously articulated a presumption that a defendant's substantial rights are affected when the government has only weak evidence on knowledge of prohibited status. We have little reason to jettison that presumption here. That presumption would compel us to find a substantial effect on Mr. Perez-Perez's substantial rights.

## IV. The error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

The omission also satisfies the fourth prong of the plain-error test by affecting the fairness, integrity, or public reputation of judicial proceedings. The third and fourth prongs are independent inquiries, and the fourth prong is satisfied only when an error is "particularly egregious" and inaction would result in a "miscarriage of justice." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (en banc) (citation omitted).

For example, the fourth prong is satisfied when the error causes the conviction or sentencing of an actually innocent defendant. *United States v. Trujillo-Terrazas*, 405 F.3d 814, 820 n.1 (10th Cir. 2005). But a defendant can satisfy the fourth prong without proving actual innocence. *Id.* Mr. Perez-Perez has satisfied this prong because the government

14

probably couldn't prove his knowledge of prohibited status or constructive possession of the heroin in the shoe.

Given the likelihood of an acquittal, affirmance would create a miscarriage of justice. Because of the court's failure to fully inform Mr. Perez-Perez of the elements of the firearm charge, he pleaded guilty despite the probability that

- the government couldn't prove guilt and

- he would have pleaded not guilty if he had known of the government's burden to prove knowledge of his prohibited status.

The obvious error thus affects the fairness, integrity, or public reputation of the judicial proceedings.

## V.   Conclusion

In my view, there is a reasonable probability that absent the error, Mr. Perez-Perez wouldn't have pleaded guilty because of (1) the weakness of the government's evidence showing knowledge of his unlawful status and (2) the government's inability to prove Mr. Perez-Perez's constructive possession of at least 100 grams of heroin.

Because Mr. Perez-Perez has satisfied his burden under all four prongs of the plain-error test, I would vacate his conviction and remand with instructions for the district court to impose a new sentence on the remaining heroin charge.

15