**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 21, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WILLIAM I. WILSON,

    Defendant - Appellant.

Nos. 21-1099 & 21-1150
(D.C. No. 1:08-CR-00263-KHV-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **KELLY**, and **CARSON**, Circuit Judges.
_____

In Appeal No. 21-1099, William Wilson appeals the district court's revocation

of his supervised release, its imposition of new terms of imprisonment and supervised

release, and its rejection of his claims of vindictive prosecution related to those

proceedings.  Wilson's counsel filed a motion to withdraw, together with a brief

under *Anders v. California*, 386 U.S. 738 (1967), based on counsel's assessment that

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

any argument on appeal would be frivolous.  We agree, grant counsel's motion to withdraw, and dismiss the appeal.

In Appeal No. 21-1150, Wilson proceeds pro se and appeals the district court's denial of his motion to modify his prison sentence so he could serve it at home. Wilson's opening brief in No. 21-1150 does not address the district court's order, which we affirm.

## I.    Background

A federal jury convicted Wilson in 2010 "on multiple counts of bank fraud, aggravated identify theft, fraudulent use of a Social Security number, and fraud in connection with an access device." *United States v. Wilson*, 503 F. App'x 598, 600 (10th Cir. 2012).  The district court sentenced him to ten years' imprisonment followed by five years of supervised release.  The terms of supervised release imposed by the district court at the time of Wilson's conviction stated he "shall not commit another federal, state or local crime," prohibited him from "associat[ing] with any person convicted of a felony," required him to provide his probation officer with "truthful and complete" monthly reports along with "access to any requested financial information," and directed him to "follow the instructions of the probation officer," among other things.  No. 21-1150, R., vol. I at 126.

Wilson began violating these terms of supervised release immediately upon his release by arranging for a known felon, Sonny Pilcher, to pick him up from prison. Wilson testified that he also arranged for Pilcher to perform post-release banking services for him by taking possession of Wilson's money and periodically sending it

2

back when Wilson asked for it.  And Wilson testified that after his release he "help[ed] [Pilcher] hire two attorneys," No. 21-1099, R., vol. IV at 158, "had a lot of correspondence" with Pilcher's attorneys, *id.* at 86, and received mail from Pilcher.

Beyond his association with Pilcher, Wilson also submitted false and incomplete reports to his probation officer that failed to report various wire transfers and other receipts, and he refused to provide his probation officer with releases to access his bank and credit card accounts.

The government sought revocation of Wilson's supervised release based on these violations.  Wilson responded by filing a pro se motion to dismiss the petition for revocation as a vindictive prosecution.  The district court held a hearing, struck Wilson's pro se motion because he was represented by counsel and his attorney did not sign it, found Wilson had violated the terms of his supervised release, and sentenced Wilson to 10 months' incarceration to be followed by 46 months of supervised release.  The district court imposed several special conditions on Wilson's supervised release, including that he "participate in a program of testing and/or treatment for substance abuse," "submit [his] person[] [and] property . . . to a search conducted by a . . . probation officer," and "participate in a program of cognitive behavioral treatment."  *Id.*, vol. I at 253.

Wilson filed a notice of appeal, a pro se motion to modify his prison sentence so he could serve it at home, and a pro se motion to set aside the judgment as the fruit of a vindictive prosecution.  The district court denied the two pro se motions because

Wilson's counsel did not sign them and because it found the two motions lacked merit. Wilson appealed those denials, resulting in two appeals in this court.

Appeal No. 21-1099 pertains to the district court's entry of the revocation judgment and Wilson's vindictive-prosecution motions. Appeal No. 21-1150 pertains to Wilson's motion to modify his prison sentence. Wilson's attorney in No. 21-1099 filed a motion to withdraw, together with an *Anders* brief. Wilson responded by filing a pro se opening brief, which we construed as a response to the *Anders* brief. He also filed pro se briefs in No. 21-1150. The government did not file any response in No. 21-1099, but it did file a response in No. 21-1150. We consider the two appeals seriatim.

## II.   Appeal No. 21-1099

If an attorney concludes after conscientiously examining a case that any appeal would be frivolous, the attorney may so advise the court and request permission to withdraw. *Anders*, 386 U.S. at 744. In conjunction with such a request, counsel must submit a brief highlighting any potentially appealable issues and provide a copy to the defendant. *Id.* The defendant may then submit a pro se brief. *Id.* If the court determines that the appeal is frivolous upon careful examination of the record, it may grant the request to withdraw and dismiss the appeal. *Id.* "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the [defendant] the assistance of counsel to argue the appeal." *Id.*

4

For the reasons that follow, we conclude Appeal No. 21-1099 is frivolous. We therefore grant counsel's motion to withdraw and dismiss the appeal.

## A. Possible Issues on Appeal Discussed in Counsel's *Anders* Brief

### 1. Sufficiency of the Evidence Supporting the District Court's Finding that Wilson Violated the Terms of His Supervised Release

Wilson posits the evidence did not support the district court's finding he had violated various terms of his supervised release. Under 18 U.S.C. § 3583(e)(3), a court may "revoke a term of supervised release[] and require the defendant to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." This court reviews a "district court's decision to revoke supervised release for abuse of discretion." *United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2016) (internal quotation marks omitted). "A district court abuses its discretion only where it (1) commits legal error, (2) relies on clearly erroneous factual findings, or (3) where no rational basis exists in the evidence to support its ruling." *United States v. Englehart*, 22 F.4th 1197, 1207 (10th Cir. 2022) (internal quotation marks omitted).

### a. Wilson's Submission of False and Incomplete Reports

The government alleged Wilson violated the condition of his supervised release requiring him to submit truthful and complete written reports to his probation officer each month. In support of this allegation, it submitted evidence an individual named Jesse McMillan sent Wilson $2,215 via wire transfers in January and February

2020 and that Wilson failed to include these wires in his monthly cash-flow reports to his probation officer.  It also presented evidence Wilson received money from governmental agencies and non-profits that he failed to include on the reports.  And it presented evidence Wilson failed to report all his employers and his income from them.

The government further alleged that because Wilson signed his February 2020 report "under penalty [of] perjury" that the cash-flow statement was "true and correct," No. 21-1099, R., vol. IV at 23, he violated 18 U.S.C. § 1001, which criminalizes knowingly making false statements to the government.  And it contended that by violating this law, Wilson violated the condition of his supervised release that proscribed committing another crime.

Wilson testified that the wires in question were actually from Pilcher and that they were merely a return of money he had given Pilcher to hold for him.  He argues he did not knowingly make any false representation because he thought the forms only asked for inflows of new cash, not his own money being given back, and he did not realize he needed to report assistance from government agencies and non-profits.  Regarding his failure to report all his employers, Wilson testified that he only worked for the missing employer for two hours and therefore "didn't think it was a big deal to report this" employer or the resulting income.  No. 21-1099, R., vol. IV at 101.

Wilson's version of events fails to explain or account for McMillan's role in wiring money to Wilson.  It also conflicts with emails Wilson sent to his probation officer indicating that "every other week or so [Pilcher] would send me $20 or $25 to

6

help me out with my daily expenses. There was never any significant amount of money that I received from Mr. Pilcher." No. 21-1099, R., vol. IV at 105. And Wilson's claim the wires were a return of funds does not add up because he testified he gave Pilcher $125.57 less than the total of the wires. Considering the record as a whole, the district court did not clearly err by drawing the inference that Wilson knowingly submitted false and incomplete monthly reports. *See United States v. Fitzgibbon*, 576 F.2d 279, 284 (10th Cir. 1978) (noting the court "cannot read [a defendant's] mind, so we have to infer his knowledge [for purposes of § 1001] from his behavior and all of the facts in evidence").

### b. Wilson's Failure to Provide Access to Financial Information

The district court also found Wilson violated the condition of his supervised release requiring him to provide access to requested financial information. The record includes testimony from Wilson's probation officer that he requested that Wilson "complete a release of information . . . for all financial accounts you have had in the last five years." No. 21-1099, R., vol. IV at 32. And it includes testimony from the probation officer that Wilson did not provide the requested releases for known bank accounts. The district court did not clearly err in finding a violation consistent with this testimony.

### c. Wilson's Association with a Felon

The district court further found that Wilson violated the condition of supervised release that he refrain from associating with any person convicted of a felony. And it found that he violated the condition of supervised release that he

7

follow the instructions of the probation officer by failing to heed his probation officer's instruction to refrain from associating with any felons.

Wilson testified that he arranged for a known felon, Pilcher, to pick him up from prison. He further testified that he arranged for Pilcher to hold some of his money and to return it to him via periodic payments. He also acknowledged sending an email stating that Pilcher gave him spending money "every other week or so." No. 21-1099, R., vol. IV at 105. Wilson's probation officer testified that he instructed Wilson to avoid associating with Pilcher but later found in Wilson's apartment mail from Pilcher to Wilson and documents evincing Wilson's involvement in legal matters pertaining to Pilcher. The probation officer further testified that Pilcher's former assistant told him Pilcher paid Wilson for his legal services. And Wilson's own witness testified that Wilson and Pilcher had spoken by phone in February 2020. Given this evidence, the district court did not clearly err in finding Wilson violated these conditions of supervised release.

## 2. Substantive Reasonableness of the Revocation Sentence

Wilson argues his revocation sentence was substantively unreasonable. We review unpreserved substantive sentencing challenges for reasonableness where, as here, the defendant argued for a lower sentence in the district court. *See United States v. Mancera-Perez*, 505 F.3d 1054, 1059 (10th Cir. 2007). We apply "a presumption of reasonableness" to "a revocation-of-supervised-release sentence within the range suggested by the [United States Sentencing] Commission's policy statements." *United States v. McBride*, 633 F.3d 1229, 1232–33 (10th Cir. 2011).

8

The presumption applies here because the district court's sentence was within the range contemplated by U.S. Sentencing Guidelines Manual § 7B1.4 (U.S. Sentencing Commission 2018).

Wilson does not address the presumption or argue the evidence is sufficient to rebut it. And our independent review of the record did not uncover any evidence that would rebut the presumption. Wilson does argue that the district court's imposition of an additional term of supervised release was unreasonable because it conflicts with the congressional policy embodied in the statutes that govern supervised release. We reject this argument because the additional term of supervised release imposed by the court falls within the range authorized by the applicable statute, 18 U.S.C. § 3583(h).

### 3. The District Court's Imposition of Special Conditions of Supervised Release

The district court imposed several special conditions on the supervised release that it ordered to follow the revocation term of incarceration. Wilson argues that the evidence does not support imposition of three of these conditions.

District courts have broad discretion to impose special conditions of release, but the conditions must be constitutionally sound and must satisfy the requirements of 18 U.S.C. § 3583(d). *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011). The special conditions "must be reasonably related to at least one of the following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical,

or other correctional needs." *Id.* (citing § 3583(d)(1)).  The conditions "must involve no greater deprivation of liberty than" reasonably necessary to deter crime, protect the public, and promote the defendant's rehabilitation.  *Id.* (citing § 3583(d)(2)).  And the conditions "must be consistent with any pertinent policy statements issued by the Sentencing Commission."  *Id.* (citing § 3583(d)(3)).  In reviewing challenges to special conditions of supervised release, "we apply the abuse-of-discretion standard." *United States v. Munoz*, 812 F.3d 809, 817 (10th Cir. 2016).

Wilson first challenges the district court's requirement that he "participate in a program of testing and/or treatment for substance abuse approved by the probation officer," No. 21-1099, R., vol. I at 253.  He points out that he has regularly tested for alcohol and drug use over the past 11 years without a single positive test.  And he therefore contends the district court abused its discretion by imposing this condition.

Wilson's argument downplays his prior substance abuse, recounted in the presentence investigation report, that supported the district court's imposition of a substance-abuse-treatment condition at his original sentencing.  It also ignores Wilson's incarceration for more than 9 of the 11 years in question, and a 2019 post-release independent assessment recommending that Wilson attend at least 24 weeks of substance-abuse treatment.  And it does not address the district court's statement that the treatment requirement can be removed if Wilson continues to test negative.  Considering these facts, the district court did not abuse its discretion by imposing the special condition related to substance-abuse testing and treatment.

Wilson next challenges the district court's requirement that he submit to searches of his person and property "when reasonable suspicion exists that [Wilson has] violated a condition of [his] supervision and that the areas to be searched contain evidence of this violation," *id.* Wilson argued to the district court it should not impose this condition because it was unnecessary given that he always consented to searches in the past. We agree with Wilson's counsel that "this is a standard condition of release and [Wilson's] argument that it need not be imposed on him because he always 'allowed' [searches in the past] is of little weight." *Anders* Br. at 12.

Wilson argues for the first time on appeal in his pro se response that the district court abused its discretion by imposing this condition because his probation officer recommended it, it is vague, it delegates authority to the probation officer to decide whether reasonable suspicion exists to justify a search, and it will force him into homelessness because no landlord will accept him as a tenant. Because he did not make any of these arguments to the district court, we review these arguments only for plain error. *See United States v. Perez-Perez*, 992 F.3d 970, 974 (10th Cir. 2021). And Wilson does not cite any authority that would support reversal under a plain-error standard of review. *Cf. United States v. Flaugher*, 805 F.3d 1249, 1252 (10th Cir. 2015) ("The text of § 3583(d) . . . plainly authorizes warrantless-search conditions . . . ."); *United States v. Neal*, 810 F.3d 512, 521 (7th Cir. 2016) ("Special conditions authorizing warrantless searches are imposed frequently . . . .") (collecting cases).

11

Wilson finally challenges the district court's requirement that he "participate in a program of cognitive behavioral treatment," No. 21-1099, R., vol. I at 253. The district court based its decision to impose this special condition on evidence that Wilson lacked remorse for his crimes and expressed an unwillingness to change. It noted that behavioral therapy can be "extremely effective in behavior modification," but recognized the reality that "unfortunately, you only get out of it what you are willing to invest in it." *Id.*, vol. IV at 165. So it expressed a lack of optimism that Wilson would "improve [his] way of thinking by participating," but declined "to suspend that program at this point on this record." *Id.*

Wilson argues this condition should be vacated due to the district court's skepticism about its efficacy, because "incapacitation[] and not rehabilitation is the law in this case," Resp. at 54, and because he can only successfully complete the program by admitting his guilt. We disagree.

The district court's skepticism that the condition might be effective in Wilson's case does not support a viable argument that the district court abused its discretion by ordering Wilson to participate. Wilson's law-of-the-case reference is misplaced because the district court had not previously ruled on whether Wilson should participate in behavioral modification therapy. *Cf. United States v. Miller*, 891 F.3d 1220, 1241 (10th Cir. 2018) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks omitted)). And Wilson's suggestion that he will be forced to admit his guilt in the program is

12

speculative and premature. When and if the government attempts to impose sanctions for Wilson's failure to participate in the program by failing to admit his guilt, Wilson can raise the issue as a defense to the government's enforcement action. *See United States v. Richards*, 958 F.3d 961, 968 (10th Cir.) ("If, at a later date, the Government . . . threatens to revoke Defendant's supervised release based on his valid invocation of his privilege against self-incrimination . . . Defendant may raise a Fifth Amendment challenge at that time."), *cert. denied*, 141 S. Ct. 861 (2020).

### 4. Legality of the New 46-Month Term of Supervised Release

Wilson contends the district court should have given him "credit for the approximate 16 months that he was on supervised release after he was originally released from prison, yielding in his view a maximum allowable term of supervised release of 34 months." *Anders* Br. at 14. The statutes for the offense that resulted in the original term of supervised released authorized the district court to impose the 60-month term of supervised release that it ordered at Wilson's original sentencing. *See* 18 U.S.C. §§ 3583(b)(1) (authorizing a five-year term of supervised release for "a Class A or Class B felony"), 3559(a)(2) (classifying crimes with maximum sentences of 25 years or more as Class B felonies), 1344 (providing a maximum sentence of 30 years for bank fraud). Upon revocation of that initial term of supervised release, § 3583(h) authorized the district court to impose a new term of supervised release equal to "the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." Because the district court

13

ordered Wilson to serve a ten-month revocation sentence, it could impose a new term of supervised release of up to 50 months. *See* § 3583(h); *see also United States v. Hill*, 831 F. App'x 407, 412 (10th Cir. 2020) ("[W]e hold that § 3583 does not require district courts to aggregate supervised release terms and that it permits courts upon revocation to restart the clock on the maximum supervised release term allowed under § 3583(b). Every other circuit that has addressed this issue has reached the same conclusion.").[1] Thus, the 46-month term it imposed does not violate § 3583.

5. **Wilson's Motions to Dismiss and to Set Aside the Judgment Due to Vindictive Prosecution**

Although he had counsel at the time, Wilson filed a pro se motion to dismiss the revocation proceeding as an improper vindictive prosecution and later filed a pro se motion to set aside the district court's judgment for the same reason. The district court struck the first motion at the revocation hearing. It noted Wilson could not "have it both ways," to proceed with counsel in the revocation proceeding but at the same time represent himself on the motion to dismiss. No. 21-1099, R., vol. IV at 112. And because Wilson elected to proceed with counsel who did not pursue the vindictive prosecution claim,[2] the district court struck the motion. It reasoned Wilson

---

[1] We cite this case only for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[2] The district court ordered the government and Wilson's counsel to respond to Wilson's pro se motion to dismiss. In Wilson's counsel's response, she "incorporate[d] most of the factual allegations set forth on pages 1-3" of Wilson's pro se motion and "supplement[ed] [it] with additional information," but stopped short of adopting it. No. 21-1099, R., vol. I at 206–09.

was "not entitled to sort of put a red light and a green light up as [he] wish[ed] to stop and start self-representation so that [he could] do an end run around the court rules with regard to the attorney-client representation." *Id.* at 113. But it invited Wilson's counsel to file a motion to set aside the judgment due to vindictive prosecution. She did not, and the district court denied Wilson's pro se motion to set aside the judgment "because [Wilson was] represented by counsel who did not sign [it]," *id.*, vol. II at 55. Wilson argues the district court "should have heard the vindictive prosecution claim regardless as to who filed the motion since there were serious constitutional violations raised in said motion." Resp. at 71.

Defendants do not have a constitutional right to a "hybrid form of representation," representing themselves in some aspects of their case and employing counsel for other aspects. *United States v. McKinley*, 58 F.3d 1475, 1480 (10th Cir. 1995). Represented defendants therefore have "no right to submit motions other than through [their] attorney." *United States v. Dunbar*, 718 F.3d 1268, 1278 (10th Cir. 2013). We see no error in the district court's rejection of Wilson's pro se motions.

## B. Additional Possible Issues on Appeal Discussed in Wilson's Pro Se Response

Wilson's pro se response to his counsel's *Anders* brief includes myriad additional issues Wilson seeks to raise on appeal. Wilson did not raise these issues before the district court, so this court would apply the plain-error standard of review. *See Perez-Perez*, 992 F.3d at 974. "Under plain-error review, the defendant must establish that (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected the defendant's

15

substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (brackets and internal quotation marks omitted). We address below the possible issues we glean from Wilson's pro se response and explain why there is no colorable argument they support reversal under the plain-error standard of review.

1. **Vagueness of the Conditions of Release**

Wilson argues that his probation officer's request that he "complete a release of information . . . for all financial accounts [Wilson] had in the last five years," No. 21-1099, R., vol. IV at 32, was too vague to support a violation of his condition of release that required him to provide access to requested financial information. Specifically, he argues that he lacked fair notice that his credit card and bank accounts would be considered "financial accounts."

Supervised release conditions "must be written so that ordinary people can understand" what is required. *United States v. Llantada*, 815 F.3d 679, 683 (10th Cir. 2016); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."). Because a person of ordinary intelligence would understand that "financial accounts" include bank and credit card accounts, we reject Wilson's vagueness argument.

Wilson similarly argues that the condition of his release proscribing association with felons was too vague because the term "associate" is vague. But we rejected a similar plain error challenge in *Munoz*, noting that "neither the Supreme

16

Court nor our court has ever invalidated this condition (or any similar condition) on vagueness grounds." 812 F.3d at 817. We see no reason the result would differ here.

Wilson also argues the district court's ruling that he failed to submit truthful and complete monthly reports should be vacated because he "lacked fair warning that he was requi[r]ed to report senior bus tokens, food bank assistance, food stamps, and rental assistance as income that should have been reported on his monthly reports." Resp. at 34. Even assuming Wilson lacked fair notice that he had to report these items, we have already explained that his failure to report other items, such as the wire transfers from McMillan, supports the district court's conclusion that he failed to submit truthful and complete monthly reports.

## 2. Admission of Wilson's Unwarned Statements

The government submitted, and the district court admitted into evidence, emails between Wilson and his probation officer. Wilson argues that because his probation officer did not provide him with a *Miranda* warning before the email exchange, its admission into evidence violated his Fifth Amendment right to be free from self-incrimination.

The Supreme Court has observed that the privilege against compelled self-incrimination is not available to a probationer in a revocation proceeding, because a probation-revocation proceeding is not a criminal proceeding. *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984). We have noted that like probation-revocation proceedings, "[t]he full panoply of rights due a defendant in a criminal prosecution does not apply to revocation hearings for . . . supervised

17

release." *United States v. Cordova*, 461 F.3d 1184, 1187 (10th Cir. 2006) (internal quotation marks omitted).  And other circuits have held that a proceeding to revoke supervised release is "not a criminal case for purposes of the Fifth Amendment right against self-incrimination."  *United States v. Hulen*, 879 F.3d 1015, 1020 (9th Cir. 2018); *see also United States v. Riley*, 920 F.3d 200, 209 (4th Cir. 2019) (holding "that because supervised release revocation proceedings are not criminal proceedings, the introduction of unwarned admissions made by [the defendant] to his probation officer did not violate [the defendant's] rights under the Self-Incrimination Clause of the Fifth Amendment").  The district court did not clearly err by admitting the emails into evidence.

### 3. Procedural Reasonableness of the Revocation Sentence

Wilson argues the district court's imposition of the revocation sentence was procedurally unreasonable because the court did not explain the sentence, acknowledge his arguments, or consider the 18 U.S.C. § 3553(a) factors.

The revocation sentence imposed by the district court was within the Sentencing Guidelines range.  In such circumstances, only a "minimum level of detail [is] required to establish the procedural reasonableness" of a sentence.  *United States v. Henson*, 9 F.4th 1258, 1291 (10th Cir. 2021), *petition for cert. filed* (U.S. Dec. 28, 2021) (No. 21-6736).  "[W]e have made it quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence."  *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004).  "Rather, it

is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence." *Id.* !

Here, the district court explained why it imposed a revocation sentence at the high end of the Guidelines range:

> [W]hat you are really trying to do is that you want to set the rules about what you are going to do on probation. I think you've acted with defiance and disrespect to the Court and that you're playing fast and loose with what rules you will abide by and which rules you won't abide by.
>
> And so I don't really see any point on continuing you on home detention and allowing you to keep doing what you have been doing. . . .
>
> . . . .
>
> The Court believes that the sentence which I have just announced is sufficient, but not greater than necessary, to meet all of the relevant factors of sentencing, and I have taken into account all of the factors enumerated in 18 United States Code Section 3553(a) and 18 United States Code Section 3583(d) based on the nature and circumstances of the offense, [and] your own personal history and characteristics, including your medical conditions.

No. 21-1099, R., vol. IV at 163, 172. This explanation addressed most of Wilson's arguments for leniency, which were grounded in § 3553(a). And the district court acknowledged Wilson's remaining arguments for leniency elsewhere. *See id.* at 142 (acknowledging Wilson's argument that he was "not a danger to the community," "in terms of violen[ce]"); *id.* at 163 (acknowledging Wilson's argument that the revocation petition stemmed from "a power struggle between" Wilson and his probation officer). The district court satisfied its obligation to impose a procedurally reasonable sentence.

19

### 4. Multiplicity of Revocation Charges

Wilson argues his revocation sentence should be vacated due to the multiplicity of the revocation charges underlying it. "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007) (internal quotation marks omitted). "[M]ultiplicity is not fatal to an indictment." *Id.* (internal quotation marks omitted). Indeed, "[t]he government may submit multiplicitous charges to the jury." *United States v. Nickl*, 427 F.3d 1286, 1301 (10th Cir. 2005). But "multiplicitous sentences violate the Double Jeopardy Clause" "because they allow multiple punishments for a single criminal offense." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal quotation marks omitted).

Wilson's argument misses the mark because post-revocation sanctions are "part of the penalty for the initial offense"; they are not punishment for the offenses that trigger the revocation, *Johnson v. United States*, 529 U.S. 694, 700 (2000). Thus, regardless of whether the revocation charges were multiplicitous, they did not give rise to a sentence that violates the Double Jeopardy Clause.

### 5. Government Misconduct

#### a. Delay in Bringing Charges

Wilson argues the government unreasonably delayed in bringing charges against him for submitting inaccurate cash-flow statements in January and February 2020. He cites a Fourth Circuit case for the proposition that "[a]fter an unreasonable time, violations of which the state is aware become stale or are waived as a basis for

20

revoking probation." *Farabee v. Clarke*, 967 F.3d 380, 393 (4th Cir. 2020).  But "cases considering due process claims for revocation proceedings have held that relief is not called for unless there was both unreasonable delay and prejudice." *United States v. Santana*, 526 F.3d 1257, 1260 (9th Cir. 2008).  Wilson has not shown either.

The government sought revocation on October 5, 2020.  Wilson cites no evidence indicating that the government knew his cash-flow statements were inaccurate before August 24, 2020, or any authority indicating the government's brief delay in bringing charges was unreasonable.  *Cf. Farabee*, 967 F.3d at 393 (finding delay of "over a decade" unreasonable).  And while he argues the delay prejudiced him because it prevented him from calling Pilcher as a witness or obtaining relevant bank records, he provides no evidence or rationale to support either claim.

### b.  Sentence Manipulation

Wilson argues the government added count 1, which alleged Wilson violated 18 U.S.C. § 1001, to the revocation petition "to increase and maximize Wilson's punishment [in retaliation] for exposing the [probation officer's] fraud and his unlawful [directive to participate in therapy]."  Resp. at 40.  He therefore asserts count 1 should have been dismissed as an improper sentence manipulation.

This court has stated that "sentencing factor manipulation" claims "should be analyzed under our established outrageous conduct standard."  *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir. 1996) (internal quotation marks omitted).  Under that standard, "the relevant inquiry is whether, considering the totality of the

circumstances[,] . . . the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." *Id.* at 964 (internal quotation marks omitted).

As noted above, the district court did not clearly err in finding Wilson violated § 1001. The government's election to bring a revocation charge based on this crime did not offend the universal sense of justice.

### c. Failure to Disclose Exculpatory Evidence

Wilson argues the government violated his due process rights by suppressing exculpatory evidence. "Due process requires the government to disclose 'evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment.'" *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021) (ellipsis omitted) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "To establish a *Brady* violation, a defendant must demonstrate that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Id.* (internal quotation marks omitted).

Wilson's first allegation of evidence suppression relates to the probation officer's and prosecutor's supposed failure to disclose to the court that documents evincing Wilson's correspondence with Pilcher's attorneys did not show Wilson had directly communicated with Pilcher. But no one represented to the court that the documents showed a direct communication between Wilson and Pilcher. The probation officer instead testified the documents included "email correspondence . . . between Mr. Wilson and people that . . . Mr. Pilcher was in communication with."

22

No. 21-1099, R., vol. IV at 39. And Wilson's attorney cross-examined the probation officer regarding these documents. *See id.* at 68–71. A prosecutor does not suppress evidence by failing to highlight what proffered evidence does not show.

Wilson also alleges the government suppressed impeachment evidence related to Pilcher's former assistant. Wilson specifically alleges the government failed to disclose the former assistant was a prisoner and a drug dealer. The former assistant did not testify; instead, the probation officer testified about information she provided to him during his investigation. And on cross-examination Wilson's attorney asked the probation officer if he knew that the former assistant was a convicted felon. The probation officer affirmed to the court that she was. The record therefore belies Wilson's claim of suppression.

### d. Presentation of Prejudicial Evidence

Wilson argues the prosecutor engaged in misconduct by presenting prejudicial evidence that (1) he did not sign the January 2020 cash-flow report he submitted to his probation officer, and (2) he did not report approximately $1,800 in wire transfers he received in January 2020 on the report. This evidence is probative of the allegation that Wilson failed to provide truthful and complete written reports to his probation officer each month. The prosecutor's introduction of this evidence does not support reversal.

### e. Use of Perjured Testimony

Wilson asserts that the probation officer provided perjured testimony regarding the fact that when he reviewed Wilson's cell phone history, it showed calls to

MoneyGram, the company that facilitated McMillan's wire transfers to Wilson. But Wilson provides no evidence to support this allegation.

### 6. Judicial Misconduct

#### a. Delegation of the Judicial Function to the Probation Officer

Wilson argues the district court improperly delegated its judicial function to a non-judicial officer in violation of Article III by soliciting the probation officer's views and by imposing the punishment recommended by the probation officer. But "the probation officer serves as an investigative and supervisory arm of the court." *United States v. Davis*, 151 F.3d 1304, 1306 (10th Cir. 1998) (brackets and internal quotation marks omitted). In that regard, "the probation officer serves as a liaison between the sentencing court, which has supervisory power over the defendant's term of supervised release, and the defendant, who must comply with the conditions of his supervised release or run the risk of revocation." *Id.* at 1306–07. Under this arrangement, "no improper delegation of judicial power occurs." *Id.* at 1307. Thus, the district court did not err by considering and ultimately adopting the probation officer's recommendation regarding punishment.

#### b. Judicial Bias

Wilson argues he did not receive a fair revocation hearing due to judicial bias. "To demonstrate a violation of due process because of judicial bias, a claimant must show either actual bias or an appearance of bias." *United States v. Scott*, 529 F.3d 1290, 1297 (10th Cir. 2008) (internal quotation marks omitted). "Judicial rulings alone are almost always insufficient to establish bias, as are mere speculation,

24

beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters."

*Leatherwood v. Allbaugh*, 861 F.3d 1034, 1050 (10th Cir. 2017) (citation and internal

quotation marks omitted).

Wilson largely bases his bias arguments on the trial judge's rulings against

him, which does not suffice.  He also points to the judge's use of the plural pronouns

"we" and "us" in her rulings.  Wilson speculates from these pronouns that the judge

"was acting as a co-prosecutor."  Resp. at 73.  Such speculation establishes neither

actual judicial bias nor an appearance of bias.

### III.  Appeal No. 21-1150

None of Wilson's appellate filings address the district court's denial of his

motion to modify his prison sentence, which Wilson has already served.  He has

therefore waived any challenge to the prison sentence.  *See Platt v. Winnebago

Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020) ("[F]ailure to raise an issue in

an opening brief waives that issue . . . ." (internal quotation marks omitted)).[3]

### IV.  Conclusion

In No. 21-1099, we grant counsel's motion to withdraw and dismiss the appeal

as frivolous.

---

[3] We also note that because Wilson's motion sought to serve his prison sentence at home and he has completed his sentence, any preserved challenge to the district court's denial would be moot.

25

In No. 21-1150, we affirm the district court's order denying Wilson's motion to modify his sentence.

Entered for the Court

Nancy L. Moritz
Circuit Judge